UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIM ALEXANDER, *et al.*,      :      Case No. 1:10-cv-697
     :
         Plaintiffs,      :      Judge Timothy S. Black
     vs.      :
     :
LAWRENCE COUNTY BOARD      :
OF DEVELOPMENTAL      :
DISABILITIES, *et al.*,      :
     :
         Defendants.      :

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 15)**

This civil action is before the Court on Defendants' motion for judgment on the

pleadings (Doc. 15) and the parties' responsive memoranda (Docs. 17, 18).

## I.   INTRODUCTION

Plaintiff Kim Alexander brings this action on behalf of herself and her minor son

("M.L.") against Defendants Lawrence County Board of Developmental Disabilities

("LCBDD") and three of its employees[1] to redress alleged violations of their civil rights.

(Doc. 5 at ¶ 1).  Specifically, Plaintiffs claim that Defendants were not properly trained in

handling a child with M.L.'s disabilities or in evaluating the source of M.L.'s behavioral

issues; that, as a result, Defendants failed to properly teach M.L. and allowed his

behaviors to escalate; and that, subsequently, Defendants used inappropriate behavior

modification techniques to attempt to curb M.L.'s behaviors.  (Doc. 17 at 3).

---

[1]  Paul B. Mollett, Superintendent of LCBDD ("Mollett"); Kendra Kelley, Principal of the Open
Door School ("Kelley"); and Daniel Honaker, Speech Therapist at the Open Door School
("Honaker").

Plaintiffs allege the following five claims:[2]

A.    Violations of Substantive and Procedural Due Process under the Fourteenth Amendment (Count I), *asserted against all defendants* (Doc. 5 at ¶ 37);

B.    Violation of Equal Protection under the Fourteenth Amendment (Count II), *asserted against all defendants* (*Id.* at ¶ 40);

C.    Violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (Count III), *asserted against LCBDD* (*Id.* at ¶ 43);

D.    Negligence and/or gross negligence under Ohio law (Count V), *asserted against all defendants* (*Id.* at ¶ 49); and

E.    Breach of contract (Count VII), *asserted against LCBDD* (*Id.* at ¶ 55).

Defendants argue that Plaintiffs' claims should be dismissed because the alleged facts are insufficient to state a claim for which relief may be granted.  (Doc. 15 at 3, 4). Additionally, Defendants maintain they are immune from civil liability.  (Doc. 18 at 7, 11).

## II.    FACTUAL BACKGROUND AS ALLEGED BY PLAINTIFFS

Plaintiff Alexander's son, M.L., is a minor child who has been diagnosed with autism, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, asthma, and a variety of other medical issues.  (Doc. 5 at ¶ 13).  Additionally, M.L. has significant speech and language impairments, which affect both his expressive and receptive language skills.  (*Id.* at ¶ 16).  Thus, M.L is considered a student with a disability pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, the

---

[2]  Counts IV and VI are not independent causes of action and therefore have been merged into the analysis of Count I and Count V, respectively.

-2-

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. (Doc. 5 at ¶¶ 13, 43).

At various times, M.L. resided in the Ironton and Rock Hill school districts within Lawrence County. (*Id.* at ¶¶ 17, 18). Both Ironton and Rock Hill had contracts with Defendant LCBDD for the provision of educational services to students with disabilities from their districts. (*Id*. at ¶ 14). Pursuant to these agreements, each of M.L.'s home school districts placed M.L. at the Open Door School ("ODS"). (*Id*. at ¶ 15; Doc. 17 at 3). ODS is a school operated by Defendant LCBDD for students designated as having "multiple disabilities" ("MD"). (Doc. 5 at ¶¶ 3, 17). It is a highly restrictive environment in which children from Lawrence County with MD are geographically and educationally segregated from typically-developing (non-disabled) peers. (*Id.* at ¶ 17). "Once M.L. was placed at the Open Door School . . . , [Defendant LCBDD] assumed responsibility for all of M.L.'s day-to-day and long-term educational needs, including the creation and implementation of [his Individualized Education Plan ("IEP"),] and all of his educational programming and transportation." (*Id*. at ¶ 20).

For four consecutive years, from 2006 through April 2010, M.L. attended ODS. (Doc. 5 at ¶ 15). Plaintiffs allege that at the time M.L. was placed at ODS, he did not have significant behavioral issues, but that over the course of four years at the school, M.L.'s behavioral issues escalated. (*Id.* at ¶ 22). Plaintiffs allege that Defendants' inappropriate behavioral modification techniques and inadequate training of its employees

caused an increase in M.L.'s behavioral issues.  (*Id.*)  For example, Defendants frequently physically restrained M.L. using a variety of techniques that included basket holds and prone restraints,[3] which consisted of having as many as five employees "hold M.L. face down on the ground while" sitting on him.  (*Id.* at ¶¶ 22, 25).

Furthermore, Plaintiffs claim that M.L.'s teachers at ODS had neither a rudimentary understanding of M.L.'s disabilities nor the proper methods of teaching a child with his conditions.  (*Id.* at ¶ 22).  According to Plaintiffs, throughout the four years that M.L. attended ODS, M.L.'s evaluations revealed that he was regressing, yet Defendants did nothing to stop his regression.  (*Id.* at ¶ 23).  Moreover, Plaintiffs assert that when M.L.'s behavioral problems escalated in 2007 and 2008, Defendants did not conduct a behavior analysis to determine what was causing M.L. to act-out or to understand how to address his behaviors, and instead, resorted to repeatedly and improperly restraining M.L.  (*Id.* at ¶¶ 24, 25).

Additionally, Plaintiffs allege that Defendants did not permit M.L. to go to school for a full day because of his disability, and that while M.L. was at school, Defendants did not adequately and properly educate M.L.  (*Id.* at ¶ 26).  For example, by the time M.L. left ODS at age fourteen, he could not read at a first grade level.  (*Id.*)

Finally, Plaintiffs claim that as a direct result of the actions and conduct of the Defendants, they suffered and continue to suffer loss of fundamental statutory rights, loss

---

[3]  "Prone restraint is defined as all items or measures used to limit or control the movement or normal functioning of any portion, or all, of an individual's body while the individual is in a face-down position for an extended period of time. Prone restraint includes physical or mechanical restraint."  Ohio Admin. Code § 5101:2-5-13.

of educational and developmental opportunities, and extreme emotional pain and suffering. (Doc. 5 at ¶ 56).

Therefore, Plaintiffs seek: (1) a declaratory judgment that the acts and conduct of Defendants constitute violations of their constitutional, statutory, and common-law rights; (2) to enjoin Defendants from violating their constitutional and statutory rights; (3) compensatory damages and punitive damages; and (4) costs and attorney's fees. (*Id.*)

### III. STANDARD OF REVIEW

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower v. Fed. Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

The Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To withstand the dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 554-55. The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under

some viable legal theory." *Weiner*, 108 F.3d at 88.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.  The Court does not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Id.* at 570.  "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Thus, the test for dismissal under Rule 12(b)(6) is a stringent one, and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); s*ee also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996).  For these reasons, "courts have notably hesitated to grant motions for judgment on the pleadings." *Haeberle v. Univ. of Louisville*, 90 Fed. Appx. 895, 903 (6th Cir. 2004).[4]

---

[4]  Generally, in evaluating motions to dismiss, courts "are not permitted to go beyond the facts alleged in the complaint and the documents upon which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3rd Cir. 1997).  However, the court may consider limited documents attached to the pleadings without converting the motion to one for summary judgment, including extrinsic matters that simply "fill in the contours and details of a complaint and add nothing new." *Yeary v. Goodwill Indus. Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).  Matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

## IV.   ANALYSIS

### A.   Substantive and Procedural Due Process under the Fourteenth Amendment (Count I)

Plaintiffs allege that Defendants violated their procedural and substantive due process rights under the Fourteenth Amendment.  (Doc. 5 at ¶¶ 5-8, 37).  Plaintiffs bring these claims under 42 U.S.C. § 1983.  (*Id*).  Section 1983 authorizes claims for relief against any person who, acting "under color of any [state] statute, ordinance, regulation, custom, or usage," deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws."  *Gomez v. Toledo*, 446 U.S. 635, 638 (1980).  To prevail on a claim under § 1983, a plaintiff must prove:  (1) that the defendant deprived the plaintiff of a right secured by the United States Constitution or federal statute; and (2) that the defendant acted under color of state law.  *Id*. at 640.  In evaluating this type of claim against a local government entity the Court must also apply a two-part test:  (1) the plaintiff must have sufficiently established a constitutional violation and (2) the Court must determine whether the local government entity caused the constitutional violation. *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

The Due Process Clause has procedural and substantive components that require separate examination.  As the Sixth Circuit explained in *Howard v. Grinage*, "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards."  82 F.3d 1343, 1350 (6th Cir. 1996).

### 1.   Procedural Due Process

"In procedural due process claims, the deprivation . . . of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest" without the opportunity to be heard. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Plaintiff Alexander claims that her right to familial relationships was violated. (Doc. 5 at ¶ 37).  Parents have a fundamental liberty interest in the care, custody, and control of their children.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (referring to this interest as "perhaps the oldest of the fundamental liberty interests recognized by th[e Supreme] Court").  Indeed, the fundamental right of a parent to raise his or her child and to direct the education of his or her child has been clearly established.  *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 972 (6th Cir. 2004).  However, where there is neither a loss of custody nor any separation between the parent and the child, there is no constitutional violation.  *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 590-91 (6th Cir. 2008).

Plaintiff Alexander asserts that Defendants violated her right to control the education of her son by failing to educate him, by allowing him to regress both educationally and behaviorally, and by repeatedly using improper restraint methods. (Doc. 17 at 6).  However, Plaintiff does not allege that she was ever deprived of her right to raise, control, or care for her child, either temporarily or permanently.[5]

---

[5]  For example, Plaintiff does not allege that she lost custody of M.L. or that she was separated from him.  Additionally, Plaintiff does not claim that Defendants prohibited her or prevented her from participating in M.L.'s IEP, that she was excluded from the decision-making process or IEP meeting, or that she did not approve of the IEP.

Therefore, Plaintiff has failed to allege sufficient facts to state a claim for a procedural due process violation.

### 2.     *Substantive Due Process*

"Due process protection in the substantive sense limits what the government may do in both its legislative . . . and its executive capacities." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). When a specific act of a governmental officer is at issue, to be arbitrary in the constitutional sense, the official conduct must be egregious. *Id.* at 846. As the Supreme Court has explained, the "Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression." *Id*.

To state a cognizable substantive due process claim, a plaintiff must allege "conduct intended to injure in some way [that is] unjustifiable by any government interest[; such conduct] is the sort of official action most likely to rise to the conscience-shocking level." *Cnty. of Sacramento*, 523 U.S. at 849. A showing of mere negligence is insufficient to make out a substantive due process claim. *Id.* However, conduct that falls towards the more culpable end of the tort law spectrum of liability, consisting of "something more than negligence but less than intentional conduct, such as recklessness or gross negligence, [requires courts to make] closer calls," in which the determination of what shocks the conscience is context-specific. *Id*. As the Supreme Court has indicated, "[what] . . . shocks in one environment may not be so patently egregious in another." *Id.* at 850. Thus, an analysis of the totality of the circumstances must occur "before any abuse of power is condemned as conscience-shocking." *Id*.

### a.    Constitutional Violation

Plaintiffs claim that Defendants violated M.L.'s substantive due process rights by inappropriately restraining him.  (Doc. 5 ¶ 27).  It is well established that persons have a constitutionally protected liberty interest in their personal bodily integrity.  *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).[6]

First, Defendants admit that M.L. was frequently physically restrained at ODS. (Doc. 8 at ¶ 20).  According to Plaintiffs, the restraints were not only frequent but also improper:  Defendants "physically restrained" M.L. using inappropriate and even "highly-dangerous" techniques, including "basket holds" and "prone restraints," such as physically sitting on M.L. and holding him face down "on the ground in a prone position."[7]  (Doc. 5 at ¶¶ 25, 27, 29; Doc. 17 at 6).  As a special-needs child, M.L. is particularly vulnerable which heightens Defendants' level of responsibility for M.L.'s well-being.  *See Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 885 (M.D. Tenn. 2010).[8]

Second, nothing in the pleadings suggests that Defendants had a legitimate reason for their actions.  Specifically, there is no indication that Defendants' repeated use of

---

[6]  *See also Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("[Liberty] from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action").

[7]  "Restrain[ing] a . . . [person] face down on the floor or put[ting] pressure on . . . [a person's] back . . . [poses]the danger of suffocati[ng that person]."  *Lanman v. Hinson*, 529 F.3d 673, 687 (6th Cir. 2008).  Such restraint techniques are considered abusive and dangerous in nature.  *Id.*

[8]  *See also Dockery v. Barnett*, 167 F. Supp. 2d 597, 604 (S.D.N.Y. 2001) (indicating that autistic children "are more vulnerable and less capable of communicating than other children").

intrusive physical restraints was in response to any student misconduct. Rather, Plaintiffs allege that Defendants used improper restraints in a malicious, bad faith, wanton, or reckless manner; that as a result, M.L. regressed and his behavioral issues escalated; and that such conduct by Defendants caused both physical and emotional harm to M.L. (Doc. 17 at 15, 16; Doc. 5 at ¶ 27).

Finally, Plaintiffs' assertion that M.L. continues to suffer extreme emotional pain implies that the injuries he underwent were severe, especially considering that the alleged abuses continued over the course of four years. (Doc. 5 at ¶¶ 22-25, 29, 56).

In sum, because M.L. is a special-needs child and if the physical restraints were neither disciplinary in nature nor in conformance with M.L.'s IEP, a trier of fact could find that Defendants' restraint of M.L. was an abuse of Defendants' official power and shocking to the conscience.[9] Therefore, the Court finds that Plaintiffs have sufficiently stated a cause of action for a violation of M.L.'s substantive due process rights.

Next, the Court must determine whether Plaintiffs have alleged sufficient facts to demonstrate that Defendants are liable for the constitutional violation. *See Doe*, 103 F.3d 495 at 505. To evaluate Defendants' liability, the Court must conduct a separate analysis of Defendants Mollett, Kelley, and Honaker in their individual capacity and of Defendant LCBDD in its municipal capacity. *Id.* at 506-11.

---

[9] *See, e.g., M.S. v. Seminole Cnty. Sch. Bd.,* 636 F. Supp. 2d 1317, 1323 (M.D. Fla. 2009) (concluding that "the conscience-shocking threshold is more quickly reached in cases where the victim is particularly vulnerable to abuse and is otherwise defenseless").

**b. Whether Defendants Mollett, Kelley, and Honaker are responsible for the constitutional violation**

Defendants concede that Mollett, Kelley, and Honaker were at all relevant times employees of Defendant LCBDD and acting under color of state law. (Doc. 5 at ¶¶ 6-8; Doc. 8 at ¶¶ 6-8). Therefore, Plaintiffs have properly alleged a substantive due process claim against the three individual defendants.

**c. Whether Defendants Mollett, Kelley, and Honaker are entitled to qualified immunity**

Defendants contend that even if Plaintiffs state a claim for a substantive due process violation, it should be dismissed because Defendants are entitled to qualified immunity. (Doc. 18 at 8).

Qualified immunity shields "government officials performing discretionary functions . . . from [personal] liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, qualified immunity will not protect the "plainly incompetent" or those "who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). In determining whether qualified immunity shields a government employee, the Court must apply a two-step inquiry: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009). If so, the government employee is not entitled to qualified immunity from suit. *Id.*

-12-

The Court already analyzed the first step of the inquiry.  As discussed in Section IV.A(2)(a)-(b) *supra*, Plaintiffs allege sufficient facts to state a claim for a substantive due process violation.

Next, the Court must consider whether M.L.'s right to be free from bodily restraint was clearly established at the time of the alleged violations.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  At the time M.L. was allegedly mistreated, from 2006 to 2010, it was well established that students had a liberty interest in freedom from unreasonable restraint and mistreatment.  *See Youngberg*, 457 U.S. at 316 ("[Liberty] from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action"); *see also Lillard,* 76 F.3d at 725 (well established that persons have a constitutionally protected liberty interest in their personal bodily integrity).  Most specifically, as early as 1977, the Supreme Court stated that public school students have a constitutional due process right "to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 673 (1977).  And nearly 20 years later, the Supreme Court described *Ingraham* as standing for the proposition that while "children sent to public schools are lawfully confined to the classroom, arbitrary corporal punishment represents an invasion of personal security to which their parents do not consent when entrusting the educational mission to the State." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).

Accordingly, Defendants Mollett, Kelley, and Honaker are not entitled to qualified immunity.

**d.    Whether Defendant LCBDD is responsible for the constitutional violation**

A liability claim against a municipality cannot be based solely on the actions of its employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must show that the local government entity itself, in its municipal capacity, is the wrongdoer. *Collins v. City of Harker Heights,* 503 U.S. 115, 122 (1992). Plaintiffs must demonstrate not only: (1) the violation of a constitutional right, but also (2) that the enforcement of a municipality's policy, custom, or practice, or a decision of a final policy-maker caused the constitutional violation. *Monell,* 436 U.S. at 694.

The Court has already concluded that Plaintiffs have satisfied the first prong of the test as to the violation of a constitutional right. Now, the Court must determine whether Plaintiffs have alleged sufficient facts from which the existence of an unconstitutional custom or policy can be inferred. *See Doe*, 103 F.3d at 509 (holding that the finding of a custom or policy is the initial determination to be made in any municipal liability claim).

A "policy" for the purposes of § 1983 is "a deliberate choice to follow a cause of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A "custom" within the meaning of § 1983 is a practice of state officials that is "so permanent and well settled" as to virtually constitute law. *Monell*, 436 U.S. at 691.

The Sixth Circuit has recognized that "[t]here are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff

can look to: (1) the municipality's legislative enactments or official agency policies;

(2) actions taken by officials with final decision-making authority; (3) a policy of

inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal

rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert.*

*denied*, 546 U.S. 814 (2005).

  In the present case, Plaintiffs allege a policy of inadequate training.  (Doc. 17 at 4).

However, liability based on a failure to train exists only if a plaintiff can prove that a

municipality's failure to train its employees "reflects deliberate indifference to the

constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 389

(1989).  The standard of "deliberate indifference" is a stringent one and requires proof

that the defendants "disregarded a known or obvious consequence" of their actions.  *Bd.*

*of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).  Under that standard,

the plaintiff must establish that the municipality was aware of the unconstitutional acts of

its employees and failed to respond.  *City of Canton*, 489 U.S. at 390-91.

  To establish an unconstitutional municipal policy or custom based upon a failure to

train or supervise, a plaintiff must satisfy the following three elements: (1) that the

training or supervision was inadequate for the tasks performed; (2) that the inadequacy

was the result of the municipality's deliberate indifference; and (3) that the inadequacy

was closely related to or actually caused the injury.  *Russo v. City of Cincinnati*, 953 F.2d

1036 (6th Cir. 1992).  In particular, a plaintiff must show "prior instances of

unconstitutional conduct demonstrating that the County has ignored a history of abuse and

was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.), *cert. denied*, 546 U.S. 1075 (2005).

Here, Plaintiffs allege that Defendant LCBDD had a "policy or practice of inadequately training its staff in dealing with children with certain types of disabilities and behavioral issues, of using improper restraint methods, and of failing to adequately train its staff on proper restraint methods." (Doc. 17 at 4). However, Plaintiffs do not allege that LCBDD had a well-settled practice or custom that reflected a deliberate indifference to the mistreatment of its special-needs students.

First, Plaintiffs have not pled facts sufficient to show that the training of LCBDD employees was inadequate or that the need for more or different training was obvious.[10] Plaintiffs fail to aver that Defendants' mistreatment of M.L. was part of a pattern and practice of physical harm toward special-needs students in LCBDD's operation of ODS. Second, nothing in the pleadings suggests that LCBDD knew of prior unconstitutional actions by its employees and failed to respond.[11]

Finally, Plaintiffs have not sufficiently alleged that an inadequacy in LCBDD's training likely caused the deprivation of M.L.'s constitutional rights. In particular, Plaintiffs have not pled factual content so as to allow the Court to draw the reasonable

---

[10] For example, Plaintiffs do not allege that LCBDD employees were involved in prior unconstitutional conduct or had mistreated other special education students.

[11] For example, Plaintiffs do not allege that LCBDD had any knowledge of acts of abuse on its special-needs students or of employees with a history of inappropriate behavior modification techniques.

inference that there is an inadequacy in LCBDD's training that is likely to cause its employees to mistreat special-needs students.

Therefore, taking all factual allegations as true and making reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs have not stated a plausible claim that LCBDD's alleged failure to train its employees evidenced an unconstitutional policy or custom. Consequently, Plaintiffs have failed to satisfy the second prong of the test and their substantive due process claim against Defendant LCBDD fails as a matter of law.

### B.    Equal Protection under the Fourteenth Amendment (Count II)

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995). The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006). It is important to clarify that "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decision-makers from treating differently[,] persons who are in all relevant respects alike." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008). "In essence, a [s]tate must treat similarly situated individuals in a similar manner." *Id.* However, because people with disabilities "are not [considered] a [protected or] suspect class for purposes of an equal protection challenge[,] . . . [a] state may . . . treat disabled students

differently, so long as its actions are rationally related to some legitimate governmental purpose." *Id.*

Plaintiffs claim that "[disabled students] do not receive the same educational opportunities as non-disabled students [because the] . . . Open Door School educationally-and geographically-segregates students with disabilities, thus classifying them according to their disabilities." (Doc. 17 at 6). Consequently, Plaintiffs allege that "M.L. was treated differently" by being in a segregated school, being physically restrained, not being taught to read, not being able to attend one full day of school, and being taught by untrained or under-trained teachers. (*Id.*).

However, Plaintiffs do not satisfy the threshold requirement of disparate treatment. Specifically, nothing in the pleadings suggests that Defendants treated students without disabilities more favorably than M.L. In fact, Defendants cannot treat non-disabled students differently since non-disabled students do not attend ODS. (Doc. 18 at 7). "[T]he Open Door School is a school *specifically* for students with multiple disabilities ... [and] neither LCBDD nor its employees have control over any ... non-disabled students." (*Id.*)

Additionally, Plaintiffs do not allege any facts to support their claim that M.L. is similarly situated to non-disabled students. Since non-disabled students do not attend ODS, they cannot be considered similarly situated. (Doc. 18 at 7). In fact, the Sixth Circuit has held that special education and general education students are not similarly situated. *Clark v. Banks*, 193 F. App'x 510, 515 (6th Cir. 2006) ("[B]ecause school districts are obligated by federal and state mandate to provide special programs and

services to disabled students, which often increase the cost of educating the student, such disabled students are not similarly situated to general education students").

Accordingly, Plaintiffs' equal protection claim fails.

## C. Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (Count III)[12]

Next, Plaintiffs allege a claim for disability discrimination against Defendant LCBDD.[13]  To establish a *prima facie* case of discrimination under § 504 or the ADA, a plaintiff must prove "that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program by reason of his or her disability." *S.S.*, 532 F.3d at 453.  Further, the plaintiff must show that the discrimination was intentionally directed toward him or her solely because of his or her disability in the context of that public service, activity, or program.  *Tucker v. Tennessee*, 539 F.3d 526, 535 (6th Cir. 2008).  "To prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by the IDEA must be shown."  *S.S.*, 532 F.3d at 453.

### 1. Exhaustion of Administrative Remedies under the IDEA

First, Defendant argues that this claim should be dismissed for failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"),

---

[12]  Because the protections under the ADA parallel the protections available under § 504, the Court will analyze Plaintiffs' ADA and § 504 claims together.  *S.S.*, 532 F.3d at 452.

[13]  Plaintiffs concede that the § 504 and ADA claims against Defendants Mollett, Kelley, and Honaker must be dismissed (Doc. 17 at 10), as there is no individual liability under § 504 or the ADA.

20 U.S.C. § 1400.[14]

In order to effectuate the rights created by the IDEA, states are required to establish certain procedures, such as providing a person with the opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(6)(A). Such complaints must be given an impartial due process hearing, and if necessary a review by a higher state agency. *Id.* § 1415(f),(g). Those persons dissatisfied with the results of the administrative hearing and appeal may file suit in state or federal court for judicial review of the administrative decision. *Id.* § 1415(i)(2)(C). However, plaintiffs must exhaust their administrative remedies before filing a civil action. *Id.* § 1415(l). The provision requiring exhaustion is very broad, as it covers not only claims brought under the IDEA, but also any claims that *could have* been brought under the IDEA:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws *seeking relief that is also available under [subchapter II of the IDEA]*, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

---

[14] The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). One of the primary mechanisms through which special-needs children are ensured the receipt of a free appropriate public education is through the development of an IEP. *Id.* §§ 1401(14), 1412(4).

*Id.* § 1415(l) (emphasis added).

In the case at bar, Plaintiffs do not assert any claims directly under the IDEA and, in fact, seek compensatory damages which are not available under the IDEA. (Doc. 17 at 11). However, even when a plaintiff does not rely on the IDEA as the source of his or her claims, if any claim is directly related to providing a "free appropriate public education" ("FAPE") to a disabled child, then such a claim requires the exhaustion of administrative remedies. *Covington v. Knox Cnty. Sch. Sys.,* 205 F.3d 912, 916 (6th Cir. 2000). Further, a claim for damages, standing alone, does not excuse a plaintiff from exhausting his or her administrative remedies. *Id.* Instead, "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's procedures and remedies, exhaustion of those remedies is required." *S.E. v. Grant Cnty. Bd. of Educ.,* 544 F.3d 633, 642 (6th Cir. 2008). However, "parents may bypass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe,* 484 U.S. 305, 327 (1988).

Under the IDEA, the school district of residence is responsible for ensuring that a FAPE is provided to M.L. (Doc. 17 at 11). Because Rock Hill and Ironton were M.L.'s school districts of residence at various times, both school districts were responsible for providing M.L. with a FAPE. (*Id.*) As a result, Plaintiffs filed an administrative due process complaint against the two school districts for IDEA violations and, subsequently, settled the educational and related services component of their complaint. (*Id.* at 12). Plaintiffs, therefore, argue that exhaustion is not applicable in this case. (*Id.* at 13). Further, Plaintiffs claim "exhaustion would be futile since M.L. no longer attends Open

Door School and there are no aspects of his special education services that could be remedied by a due process complaint [under the IDEA, because Plaintiffs have settled M.L.'s educational-services-related claims].  All that is left now is money damages." (*Id.*)  Conversely, Defendant LCBDD contends that Plaintiffs have not met the burden of showing that the administrative process would have been futile, "because . . . a remedy could have been fashioned by a hearing officer."  (Doc. 18 at 10).

The issue before the Court is whether M.L.'s alleged injuries are the type of injuries redressed by the IDEA's administrative procedures and remedies.  *S.E.*, 544 F.3d at 642.  If so, exhaustion of those remedies is required.  *Id.*  If not, the claims necessarily fall outside the IDEA's scope, and exhaustion is unnecessary.  *Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000).

The alleged set-backs of M.L.'s educational progress (*see* Doc. 5 at ¶¶ 23, 26) are educational-based injuries, because they relate to the school's provision of a FAPE and are precisely the type of injuries the IDEA is intended to remedy.[15]  *Charlie F. v. Bd. of Edu.*, 98 F.3d 989 (7th Cir. 1996).  Regardless, Plaintiffs no longer seek redress for M.L.'s educational-based injuries since such injuries have already been remedied through a settlement agreement with the school district.  (Doc. 17 at 13).  As a result, the injuries that are left to be redressed are M.L.'s alleged physical and emotional injuries.  The Court construes these injuries as non-educational injuries because they are not directly related to

---

[15]  The IDEA provides comprehensive educational solutions to assist a child with a disability to benefit from a special education, including "psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling."  20 U.S.C. § 1401(26)(A).

the school's provision of a FAPE, and thus fall outside the IDEA's scope.[16]  Therefore,

Plaintiffs were not required to exhaust the IDEA's administrative remedies.  *See*

*Covington,* 205 F.3d at 917-18.[17]

### 2.    *Section 504 and ADA*

Alternatively, Defendants argue that this claim should be dismissed for failure to

state a claim.  There is no dispute between the parties that M.L. satisfies the first and

second elements of the *prima facie* test.  (Doc. 15 at 8).  However, the parties dispute the

third element.  (Doc. 18 at 8).

The Court finds that the same alleged facts that would support a reasonable

inference that Defendant's conduct was sufficiently "conscience-shocking" to violate

M.L.'s substantive due process rights, also support a reasonable inference under § 504

and the ADA, that Defendant "intentional[ly] discriminat[ed] against M.L. on the basis of

his disability."  (Doc. 5 at ¶ 27).  Specifically:

> Defendant knew M.L. was a minor child, who not only suffered from
> autism, ADHD, bipolar disorder, and asthma, but who also lacked the
> ability to both verbally express himself and understand what others said.
> (*Id.* at ¶¶ 13, 16, 27).  Defendant did not permit M.L. to go to school for a
> full day solely because of his disability.  (*Id.* at ¶ 26).  Defendant
> physically restrained M.L. while at the Open Door School on a frequent

---

[16]  *See Padilla*, 233 F.3d at 1274 (holding that exhaustion was not required because plaintiff's injuries were "noneducational" and would not be redressed by the IDEA).

[17]  *Covington* followed the reasoning in *Witte v. Clark Cnty. Sch. Dist.*, 197 F.3d 1271, 1275-76 (9th Cir. 1999) (holding that exhaustion was not required where the plaintiff was seeking "only monetary damages" for alleged "physical abuse and injury" and "all educational issues already have been resolved to the parties' mutual satisfaction"; noting that "[t]he remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages").

basis.[18]  (*Id.* at ¶¶ 25, 27, 29).  Defendant used inappropriate and even highly-dangerous restraint techniques on M.L. in a malicious, bad faith, wanton, or reckless manner; Defendant's actions escalated M.L.'s disability-related behavioral issues.  (*Id.* at ¶¶ 22, 27, 52).  School evaluations revealed M.L. was regressing.  (*Id.* at ¶ 23).  Defendant did not conduct a behavior analysis or attempt to understand the underlying reasons for M.L.'s regression.  (*Id.* at ¶¶ 23, 24).  Defendant knew that M.L.'s disability-related behavioral issues were worsening and becoming severe.  (*Id.* at ¶ 27).  Despite this knowledge, Defendant continued to further victimize M.L. by using more, inappropriate, physical restraints; and, caused both physical and emotional harm to M.L.  (Doc. 17 at 15, 16; Doc. 5 at ¶ 27).

Construing Plaintiffs' allegations in the light most favorable to them, the alleged factual context can give rise to the inference that Defendant, as a special education provider, consciously disregarded M.L.'s situation by employing physical restraint techniques, despite knowledge of their ineffectiveness and harm.  Given that nothing in the pleadings suggests that Defendant had a legitimate nondiscriminatory reason for its conduct, one could plausibly infer that Defendant's improper actions were intentionally directed toward M.L. solely because of his disability.

Accordingly, Plaintiffs have sufficiently stated a *prima facie* case of disability discrimination against Defendant LCBDD.

**D.    Negligence (Count V)**

Plaintiffs bring a state law claim of negligence against Defendants.  For purposes of the motion for judgment on the pleadings, Defendants do not dispute that their actions constituted negligence or gross negligence; rather, Defendants argue instead that Mollett, Kelley, and Honaker have immunity as employees of a political subdivision under Ohio

---

[18]  Defendant concedes that M.L. was frequently physically restrained at ODS.  (Doc. 8 at ¶ 20).

Revised Code Section 2744.03(A)(6), and that LCBDD has political subdivision immunity under Ohio Revised Code Section 2744.  (Doc. 15 at 14, 15, 18).

### 1.  *Statutory Immunity for Defendants Mollett, Kelley, and Honaker*

Defendants argue that as employees of a political subdivision they are immune from liability under Ohio Rev. Code § 2744.03(A)(6).  (Doc. 15 at 18).  Conversely, Plaintiffs contend that Defendants are not entitled to immunity because "[they acted] in bad faith or in a wanton or reckless manner."  (Doc. 17 at 16).

Under Ohio Rev. Code § 2744.03(A)(6):

[A political subdivision] employee is immune from liability unless one of the following [three exceptions] applies: (a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose,[19] in bad faith,[20] or in a wanton[21] or reckless manner[22]; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.

---

[19]  An employee acts with a "malicious purpose," when he or she has "(1) that state of mind under which . . . [his or her] conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987).

[20]  "Bad faith" has been defined as "embrac[ing] more than bad judgment or negligence.  [Bad faith] . . . imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud."  *Slater v. Motorists Mut. Ins. Co.*, 187 N.E.2d 45, 46 (Ohio 1962).

[21]  "Wanton" conduct is "the failure to exercise any care whatsoever."  *Hawkins v. Ivy*, 363 N.E.2d 367, 369 (Ohio 1977).

[22]  An employee acts in a "reckless" manner:

if he [or she] does an act or intentionally fails to do an act which it is his [or her] duty to the other to do, knowing or having reason to know of facts which would lead a reasonable [person] . . . to realize, not only that his [or her] conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his [or her] conduct negligent.

*Thompson v. McNeill*, 559 N.E.2d 705, 708 (Ohio 1990).

Whether behavior constitutes reckless or wanton conduct, so as to fall within the exception to statutory immunity, is ordinarily a factual question for a jury to decide. *Fabrey v. McDonald Police Dep't.*, 639 N.E.2d 31, 35 (Ohio 1994).  Therefore, in order to grant a motion for judgment on the pleadings under Ohio Rev. Code § 2744.03(A)(6), the pleadings must be "devoid of evidence tending to show that the political subdivision employee acted wantonly or recklessly." *Irving v. Austin*, 741 N.E.2d 931, 934 (Ohio Ct. App. 2000).  At this early stage of the proceedings, Plaintiffs do not need to show with great specificity how each Defendant contributed to the alleged violations; rather, Plaintiffs must only state allegations generally so as to provide notice as to the nature of the injury.

Specifically, Plaintiffs allege that, from 2006 through 2010, Defendants maliciously, wantonly, recklessly, or in bad faith: used inappropriate behavioral modification techniques; used improper physical restraints on M.L., including highly-dangerous prone restraints, on a frequent basis; allowed M.L.'s behaviors to escalate; caused both physical and emotional harm to M.L.; used unqualified teachers in the classroom; failed to assess the reasons for M.L.'s behavioral issues; failed to properly educate M.L. according to his needs; and failed to properly train and equip staff with the tools and skills necessary to properly teach a child with autism and other disabilities. (Doc. 5 at ¶¶ 15, 22, 27, 52; Doc. 17 at 3, 6, 16).  Further, Plaintiffs indicate that "the actions and omissions of the defendants were similar in nature, repeatedly continued over time[,] and the effects of those violations are still being felt [by Plaintiffs] today."  (Doc.

5 at ¶¶ 29, 30). Plaintiffs also provide specific examples to support their allegations. (Doc. 5 at ¶¶ 22, 23, 25, 26).

Therefore, Plaintiffs have alleged sufficient facts from which a jury could conclude that Defendants' conduct falls within the exception to immunity under Ohio Revised Code § 2744.03(A)(6)(b).

### 2. *Political Subdivision Immunity for Defendant LCBDD*

Defendant LCBDD contends that pursuant to Ohio Rev. Code § 2744, as a political subdivision, it is immune from liability on the state law negligence claim. (Doc. 15 at 14).

In order to determine whether a political subdivision is entitled to immunity, the Court must employ a three-tiered analysis. *Hubbard v. Canton City Sch. Bd. of Edn.,* 780 N.E.2d 543, 546 (Ohio 2002). Under the first tier, Ohio Rev. Code § 2744.02(A)(1) grants broad immunity to a political subdivision. Next, the Court must decide whether any of the five exceptions listed in Ohio Rev. Code § 2744.02(B) applies to preclude the immunity provided by statute. *Id.* Finally, if one of the five enumerated exceptions applies, then the Court must look to Ohio Rev. Code § 2744.03(A) in order to determine whether any of the defenses provided in that section applies to restore the immunity. *Id.*

First, it is undisputed that Defendant LCBDD meets the first tier of the analysis, because it is a political subdivision. *See Ridley v. Hamilton Cnty. Bd. of Mental Retardation & Dev. Disabilities*, 781 N.E.2d 1034, 1041 (Ohio Ct. App. 2002).

Next, the Court must determine whether one of the exceptions to immunity applies.[23]  *Hubbard,* 780 N.E.2d at 546.  Plaintiffs claim that the second exception to immunity, the "negligent performance of a proprietary function," applies to this case. (Doc. 17 at 14).  However, Plaintiffs fail to identify any proprietary function that was performed by Defendant LCBDD.  (*Id.*)  Therefore, LCBDD is immune from liability for the state law negligence claim.

## E.     Breach of Contract (Count VII)

Plaintiffs claim that Defendant LCBDD breached its agreement with the Rock Hill and Ironton City school districts for the provision of special education services.  (Doc. 5 at ¶¶ 14, 20, 55).  Although Plaintiffs are not a party to the contract between Defendant LCBDD and the school districts, Plaintiffs allege that they are third-party beneficiaries to the contract and, as such, have a right to enforce the contract.  (*Id.* at ¶ 55).

Under Ohio law, "a third party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract."  *Chitlik v. Allstate Ins. Co.*, 299 N.E.2d 295, 297 (Ohio Ct. App. 1973).  To bring an action on a contract theory as a third-party beneficiary, a plaintiff must demonstrate that the parties to the agreement

---

[23]  The five exceptions to immunity are as follows:  "(1) if the harm was caused by the negligent operation of a motor vehicle by an employee . . . , (2) if the harm was caused by the negligent performance of a proprietary function by an employee . . . , (3) if the claim arises from the negligent failure to keep public roads in repair and free from obstruction, (4) if the harm was caused by 'the negligence of . . . employees and [ ] occur[ed] within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, . . .' [or] (5) if the Revised Code imposes civil liability on the board."  *Moss v. Lorain Cnty. Bd. of Mental Retardation*, 924 N.E.2d 401, 405 (Ohio Ct. App. 2009).

intended to confer a benefit upon the plaintiff. *Hill v. Sonitrol of Sw. Ohio, Inc.*, 521 N.E.2d 780, 784 (Ohio 1988). Although performance of a contract will often benefit a third person, a plaintiff who only indirectly or incidentally benefits from a contract will not have a right of action; rather, the plaintiff must be the intended beneficiary to have enforceable rights under the contract. *Id.* "Courts generally presume that . . . the parties' intention to benefit a third party [is] . . . found in the language of the agreement." *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011). Therefore, the intent of the parties to the contract is the cornerstone of a claim for third-party beneficiary status. *Id.*

Here, Plaintiffs allege that LCBDD entered into an agreement with the Rock Hill and Ironton school districts to provide special education services to children with disabilities residing in either school district. (Doc. 5 at ¶ 14). At various times, Plaintiffs resided in the Rock Hill and Ironton school districts. (*Id.* at ¶¶ 17, 18). Pursuant to the alleged agreement, both Rock Hill and Ironton placed M.L. in a special education school operated by LCBDD for children with multiple disabilities. (*Id.* at ¶¶ 3, 17, 18, 20). In accordance with the alleged agreement, LCBDD "assumed responsibility for all of M.L.'s day-to-day and long-term educational needs, including the creation and implementation of [his] IEP's and all of his educational programming and transportation." (*Id.* at ¶ 20). Plaintiffs allege that as "third-party beneficiaries of the contract between Rock Hill, Ironton, and [LCBDD,] . . . [they] were entitled to rely on [LCBDD's] agreement with Rock Hill and Ironton to properly educate M.L." (*Id.* at ¶ 55).

Considering Plaintiffs' assertions as true, the Court finds it plausible that the parties to the alleged contract intended to confer a benefit of education upon children with

disabilities residing in the Rock Hill or Ironton school district.  Thus, since M.L. is a child with disabilities who received special education services in accordance with the contract, it is reasonable to infer that M.L. is one of the intended third-party beneficiaries to the contract.  *See, e.g., Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 887 (S.D. Ohio 2007) (finding that disabled student is a third-party beneficiary to a contract for the provision of disabled student's special education program because he was the person the contract anticipated receiving the benefit of the special-education-school's services).

Therefore, Plaintiffs have pled sufficient facts to state a claim for breach of contract.

## V.    CONCLUSION

Accordingly, based on the foregoing, Defendants' motion for judgment on the pleadings (Doc. 15) is **DENIED with respect to**:

1.    Count I (substantive due process) claims against Mollett, Kelley, and Honaker;

2.    Count III (§ 504 and ADA) claim against LCBDD;

3.    Count V (negligence) claims against Mollett, Kelley, and Honaker;

4.    Count VII (breach of contract) claim against LCBDD;

and **GRANTED with respect to**:

5.    Count I (substantive due process) claim against LCBDD;

6.    Count I (procedural due process) claims against all defendants;

7.    Count II (equal protection) claims against all defendants;

8.    Count III (§ 504 and ADA) claims against Mollett, Kelley, and Honaker;

9.    Count V (negligence) claim against LCBDD.

**IT IS SO ORDERED.**

Date:  March 12, 2012                    <u>    *s/ Timothy S. Black*    </u>
                                          Timothy S. Black
                                          United States District Judge